```
IN THE UNITED STATES DISTRICT COURT
   FOR THE NORTHERN DISTRICT OF ILLINOIS
              EASTERN DIVISION
```

| | |
|---|---|
| **NOVOZYMES A/S and NOVOZYMES NORTH AMERICA, INC.,** | |
| Plaintiffs, | Case No. 11 C 4276 |
| v. | Judge Harry D. Leinenweber |
| **C T E GLOBAL, INC.,** | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER
### REDACTED

Before the Court is Plaintiff Novozymes' ("Novozymes") Motion for Rule to Show Cause against Defendant C T E Global, Inc. ("CTE") [ECF No. 54]. For the reasons stated herein, the Motion is denied.

### I.  BACKGROUND

This case involves a glucoamylase enzyme that contains a specific amino acid sequence described in two Novozymes patents. Glucoamylase is an enzyme used for converting corn starches into glucose, which is a crucial step in making ethanol out of corn. But most glucoamylases are unstable at certain temperatures, making them hard to work with. Novozymes claims to have "solved this problem with the introduction of thermostable glucoamylase enzymes" described in two of its patents.

Novozymes filed its Complaint in 2011, alleging that CTE was infringing on Novozymes' patents by selling products called "GLUCOAMYL L 706+" ("706+") and "GLUCOAMYL LG20" ("LG20"). According to the Complaint, those products "embod[ied]" Novozymes' patented enzyme. The parties settled in 2012, with CTE paying a certain amount of money to Novozymes for past infringement and agreeing to not infringe any further. Specifically, the parties agreed that:

> As of the date of this Order, CTE . . . shall be and [is] hereby permanently enjoined and restrained: from . . . selling . . . within the United States, and from importing into the United States, any products . . . that in any way infringe the Patents-In-Suit or any claim thereof, either literally or under the doctrine of equivalents. . . .

(Pl.'s Mem. in Support of its Mot. for Rule to Show Cause, ECF No. 56 at 4). The parties also agreed that CTE would be enjoined from "selling or offering to sell, throughout the United States, and from importing into the United States, [706+ and LG20] products which contain glucoamylase enzyme having the amino acid sequence set forth" as an attachment to the consent judgment and described in the patents. (*Id.*).

Novozymes now alleges that it has caught CTE red-handed selling a product ("CTE Glucoamyl L-209+" or "L-209+") that still infringes on Novozymes' patents. Novozymes discovered the alleged infringement by sending some of its employees to purchase L-209+ from a customer common to Novozymes and CTE (the

"secret sample"). The customer obtained the L-209+ directly from CTE, and according to Novozymes' expert, the secret sample "contains an enzyme that has an amino acid sequence that is identical to the sequence set forth in" the consent judgment and Novozymes' patents. (*Id.* at 5). After Novozymes filed this Motion, the parties agreed to test samples from CTE's warehouse (the "warehouse samples"). The testing of those samples revealed trace elements of Novozymes' patented enzyme, but in much smaller quantities than the secret sample. Novozymes asks the Court to find CTE in contempt and to award various damages to Novozymes as sanctions.

## II. <u>LEGAL STANDARD</u>

Contempt "'is a severe remedy, and should not be resorted to where there is fair ground of doubt as to the wrongfulness of the defendant's conduct.'" *TiVo Inc. v. EchoStar Corp.,* 646 F.3d 869, 881-82 (Fed. Cir. 2011) (quoting *Cal. Artificial Stone Paving Co. v. Molitor,* 113 U.S. 609, 618 (1885)). In the patent context, the Court must employ the "more than colorable differences test" in deciding whether a party is in contempt. *Id.* at 881. Under that test, the party seeking to enforce an injunction bears the burden of proving two things: first, "that the newly accused product is not more than colorably different from the product found to infringe," and second, "that the newly accused product actually infringes." *Id.* at 882.

## III. <u>ANALYSIS</u>

The more than colorable differences test is linear — that is, the Court must consider the differences between the products before considering actual infringement. *See, id.* (stating that if the newly accused product is more than colorably different, then "the inquiry into whether the newly accused product actually infringes is irrelevant"). Thus, the Court will consider the first prong before moving onto the second, if necessary.

### A. Differences Between the Two Products

Under the first prong, the Court must focus "initially on the differences between the features relied upon to establish infringement and the modified features of the newly accused products." *Id.* The inquiry is narrow in scope, and the "primary question" the Court must answer is "whether the newly accused product is so different from the product previously found to infringe that it raises a fair ground of doubt as to the wrongfulness of the defendant's conduct." *Id.* (internal quotation marks omitted). The Federal Circuit has warned that courts should not look to random features of each product. *Id.* Instead, courts should focus on the features of the original product that were specifically found to infringe and compare those features to the similar features in the newly accused product. *Id.* If the differences are significant, "the newly

accused product as a whole shall be deemed more than colorably different from the adjudged infringing one." *Id.*

Novozymes argues that CTE's L-209+ product is not more than colorably different from the 706+ and LG20 products it agreed to stop selling. Both parties present strong arguments on the colorable differences (according to CTE), or lack thereof (according to Novozymes), between L-209+ and the prior products. The natural starting point in comparing the two products is to describe the original infringing products, but in order to do that, the Court must first start with how glucoamylase is made. Generally speaking, glucoamylase is created by culturing bacteria or fungus known for producing a specific glucoamylase and then processing the results of the culture to create a glucoamylase concentrate. The process is imperfect, and the parties seem to agree that any given sample of glucoamylase contains both the specific glucoamylase enzyme and other proteins that the bacteria or fungus created during the culturing.

Glucoamylase can come from different sources. Novozymes' patented glucoamylase comes from an organism called *Talaromyces emersonii* ("*T. emersonii*"). Another key source of glucoamylase is *Aspergillus niger* ("*A. niger*"). The parties' briefing indicates that the key feature for comparing the prior infringing product and the newly accused product is the presence

of *T. emersonii*. Novozymes initially accused LG20 and 706+ of patent infringement, and those prior products appear to have been derived primarily from *T. emersonii*. For example, LG20 was comprised of ███ ██ ████████ █████████████ ███ ██ █████████ ██ ██████ ████████ ███████ ███ ██ ███ █ ████ ███ ██ ██ ██ █ █ ██ ███ The previously accused products do not appear to contain any *A. niger* glucoamylase.

After settling the case, CTE claims to have informed its suppliers that it would only accept glucoamylase sourced from *A. niger* and not *T. emersonii*. Still, the newly accused product, L209+, contains some *T. emersonii*. The secret sample is comprised of approximately ███ ██ █████████ █████████████ ██ ██ ████ █████████████ ██ ██ █ ██████ █████ ██████ ██ ██ ██ ██ ██ The warehouse samples show the presence of very small amounts of *T. emersonii* glucoamylase, ranging from ██ ██ █████████ ███████

According to Novozymes, any CTE product that contains even a nearly undetectable amount of *T. emersonii* glucoamylase is infringing because it contains the enzyme that Novozymes patented. In Novozymes' eyes, L209+ is identical to LG20 and 706+ because they all contain some amount of *T. emersonii*. CTE, on the other hand, argues that the miniscule amounts of *T. emersonii* found in the warehouse samples might be a false

positive, and that the slightly larger amount of *T. emersonii* found in the secret sample might be attributed to the testing program mistakenly identifying other proteins with a similar amino acid sequence as *T. emersonii*. CTE's experts describe this as "experimental noise," and they conclude that the samples might not actually include any *T. emersonii*. Moreover, even if the secret sample contains *T. emersonii*, CTE argues that the sample is still colorably different from the prior products because the sample contains a drastically smaller amount of *T. emersonii* than the prior product ███ ██ ██ ██ ██████ ████████████████████

The Court finds that CTE has presented just enough evidence to raise some "doubt as to the wrongfulness of the [its] conduct." *TiVo Inc.,* 646 F.3d at 882. The Court is concerned that the secret sample contains significantly higher amounts of *T. emersonii* than the warehouse sample, which might indicate that the warehouse samples are not accurate portrayals of what CTE is really selling. But the Court cannot ignore the fact that even the secret sample is comprised mostly of *A. niger* glucoamylase, an enzyme that Novozymes has not patented. And CTE has presented at least some expert evidence supporting the argument that perhaps even the secret sample contains much less — or perhaps no — *T. emersonii*. But even taking all of the testing figures at face value, the prior infringing products

were almost pure *T. emersonii* glucoamylase, and the new products are not.

For its part, Novozymes has presented very strong counterarguments, and CTE's new products might indeed infringe Novozymes' patents. For example, Novozymes might ultimately be correct that the findings of *T. emersonii* in the new products cannot possibly be the result of a false positive or any "experimental noise." But those are issues for a new infringement action where the Court and the parties have the benefit of full discovery and a rich factual record. Novozymes' burden here is a difficult one, and although it is a close call, the Court finds that there is some fair ground of doubt as to the wrongfulness of CTE's actions. This is not a case where the new products are virtually no different and the defendant has simply ignored the Court's judgment. CTE appears to have taken some steps to change its products, as shown by the vast reduction ■■ ■■ ■■■■■ ■■ ■■ of *T. emersonii* glucoamylase in its new products. This might not be enough for CTE to successfully defend a new infringement suit, but it is just enough to demonstrate that there is a colorable difference between the new products and the prior infringing ones.

### B. Remaining Arguments

Because the Court finds that L209+ is colorably different than LG20 and 706+, the Court need not consider whether the new

product actually infringes. *Id.* The Court also need not address CTE's argument that Novozymes' patents are invalid in light of *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S.Ct. 2107 (2013).

## IV. CONCLUSION

For the reasons stated herein, Novozymes' Motion for Rule to Show Cause [ECF No. 54] is denied.

**IT IS SO ORDERED.**

                                                                    _____
                                                                    Harry D. Leinenweber, Judge
                                                                    United States District Court

Dated: 8/18/2015